IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. MICHAEL WAYNE SMITHSON

**Direct Appeal from the Circuit Court for Cannon County**
**No. F01-05     J. S. Daniel, Judge**

_____

**No. M2004-01411-CCA-R3-CD - Filed March 15, 2005**

_____

The defendant appeals the revocation of his probation after he left the state to participate in a religious activity, failed to complete the required psychosexual evaluation, and failed to obtain employment.  The defendant contends that the trial court erred in (1) basing his revocation on an order that violated his right to free exercise of his religion, and (2) determining that he had failed to complete the psychosexual evaluation and obtain employment because his arrest in Texas prevented him from having an opportunity to comply with those conditions.  Following our review, we affirm the trial court's revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gerald L. Melton, District Public Defender, for the appellant, Michael Wayne Smithson.

Paul G. Summers, Attorney General and Reporter; William G. Lamberth, II, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and David L. Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts and Procedural History

The defendant, Michael Wayne Smithson, was indicted on three counts of rape and three counts of sexual battery by an authority figure.  On February 6, 2004, he pled guilty to two counts of sexual battery (Class E felonies).  The trial court sentenced the defendant, as a Range I offender, to two years on each count, to run consecutively.  Pursuant to a negotiated plea agreement, both sentences were suspended and the defendant was placed on state supervised probation for four years.  As a condition of his probation, the defendant was required to obtain a psychosexual evaluation and

follow all recommendations from those evaluations, as is required by Tennessee Code Annotated section 39-13-705(b). On March 24, 2004, the defendant's probation officer filed a probation violation report stating that the defendant had failed to maintain and verify employment and had failed to complete the psychosexual evaluation. Thereafter, a probation warrant was issued and the defendant was arrested. The matter was heard on April 1, 2004, but the parties agreed to continue it until May 7, 2004, to allow the defendant time to comply. Prior to the conclusion of the proceeding, defense counsel requested that the defendant be granted a travel permit to go to Waco, Texas.[1] The trial court denied the request, noting that it would not sign "any travel authorization until we have got this matter as it is currently situated resolved."

On April 14, the probation officer filed an amended warrant alleging that the defendant had again violated his probation by leaving the State to travel to Waco, Texas, on or about April 1, 2004. The defendant was arrested in Texas and held without bond until his revocation hearing, which was held as scheduled on May 7, 2004.

The defendant testified on his own behalf at the revocation hearing. Regarding employment, he stated that he had received a letter from a potential employer indicating that the defendant could work for him. The defendant further testified that he could still be employed by that individual as a painter, if his probation was not revoked. As to the psychosexual evaluation, he admitted that he had refused to answer some questions because he mistakenly believed that they were "repeat questions." He further stated that he would complete the evaluation if he remained on probation.

He also testified that he had been a member of the Branch Davidian faith, a derivative of the Seventh Day Adventist Church, since 1988. He stated that he traveled to Waco to observe the Passover, one of three feasts that he recognized through his faith, as he had for the previous nine years. He testified that he felt "compelled by the scriptures to keep the feast," and that Waco was "the only place [he] could keep it." He further stated that there were two Davidian headquarters in Waco; at one, approximately 150 representatives congregated for the feast and at the second, only "a handful" were present. Finally, the defendant requested that he be able to travel in the future and observe all three feasts. He also requested to see his grandchildren.

On cross-examination, the defendant stated that he knew the trial court ordered him to stay in Tennessee and that his request for a travel permit had been denied. He further stated that he told his probation officer and his attorney that he was going to Waco as soon as he left the court. Finally, he admitted that he ignored the trial court's order and traveled to Waco.

The defendant's daughters also testified and corroborated the defendant's statements that he felt he must obey the scriptures and observe the Passover feast in Waco, Texas. They further stated that he had observed the feasts in this way for many years. At the conclusion of the hearing, the trial court first noted that "neither the evaluation was completed nor was there employment." Regarding the defendant's trip to Waco, the court found that "in complete defiance of the order from the bench [the defendant] left the exact same day and left out of state without permission." Therefore, upon

---

[1] The record reflects that defense counsel did not indicate to the trial court the purpose of the trip.

finding the allegations of both the warrant and the amended warrant to be proven, the trial court revoked the defendant's probation and reinstated the original sentence.

The defendant now appeals to this Court, contending that:

1) the trial court abused its discretion in basing the probation revocation on an order which violated his right to free exercise of his religion; and

2) the trial court abused its discretion in determining that the defendant had failed to complete the psychosexual evaluation and failed to obtain employment because his arrest in Texas prevented him from having an opportunity to comply with those conditions.

Following our review, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation; as such, we affirm.

## Analysis

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, -311. The decision to revoke probation rests within the sound discretion of the trial court. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community correction sentence has occurred. Id.; State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acted arbitrarily. Gregory, 946 S.W.2d at 832; State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

In the present case, the defendant presents a two-fold argument: first, he contends that, because the trial court denied his travel request in violation of his right to free exercise of religion, probation revocation based on that travel was an abuse of discretion; and second, he contends that the trial court errantly found that he failed to complete the psychosexual evaluation and failed to obtain employment because his second arrest did not give him time to comply with the conditions.

Taking the issues in order, we first turn to our supreme court's opinion in State v. Hodges, 695 S.W.2d 171 (Tenn. 1985), which recites the standard applicable to this issue and is instructive in this appeal:

> [W]hile the freedom to hold religious beliefs and opinions is absolute, the freedom to act in harmony with these religious beliefs and opinions is not beyond state regulation where such restriction serves the public interest by promoting public health and safety or preserving order. We must then accommodate the right to exercise the religious freedoms safeguarded by the first amendment with the right of the state to regulate these individual freedoms for the sake of societal interests. The problem is one of balance and degree – the courts are called upon to determine when the societal interest becomes so important as to justify an incursion by the state into

-3-

religious activity that is otherwise protected by the free exercise clause of the first amendment.

Hodges, 695 S.W.2d at 172 (quoting In re: Palmer, 386 A.2d 1112, 1114-15 (1978)).

The court went on to explain that the analysis requires the employment of a two-part test. "[T]he threshold inquiry is whether or not the religious belief or practice asserted qualifies for the protection of the free exercise clause of the first amendment." Id. at 173. The court further noted that a mere "philosophical and personal" belief, as opposed to a religious belief, does not demand the protection of the free exercise clause. Id. (citing Wisconsin v. Yoder, 406 U.S. 205, 215, 92 S. Ct. 1526, 1533 (1972)). Then, if the court determines that the belief or practice qualifies for first amendment protection, it must further balance the defendant's first amendment right with the state's right to protect societal interests. Id. at 172-73.

In the case *sub judice*, the defendant testified that he had been a member of the Branch Davidian faith since 1988. He further stated that he had traveled to Waco in observance of the three feasts for the past nine years and that he felt "compelled by the scriptures to keep the feast." He testified that approximately 150 representatives were present at one of the two headquarters in Waco, while "just a handful" were present at the second. Finally, the defendant's daughters' testimony corroborated his statements regarding his devotion to the Davidian faith and his longstanding tradition of traveling to Waco in observance of the feasts.

We conclude that the defendant's practice constitutes his sincere religious belief. The trial court did not question the sincerity of the defendant's beliefs, and we will not. The record reflects that the defendant made the journey to Waco systematically and conscientiously over a period of years, that he felt spiritually compelled to make the journey, and that the belief was shared by a good number of members of his faith.

As we have previously noted, the defendant traveled to Texas in observance of a religious feast, a practice that he had maintained for several years. However, the trial court found that the defendant failed to comply with the requirements of employment and completing a psychosexual evaluation, and went further to defy the trial court's order regarding travel just hours after it was given. The defendant demonstrated his defiance, as he left the doors of the courtroom, by stating to both his attorney and his probation officer that he "was going [to Waco]."

Upon balancing these interests, we conclude that the State's interests in maintaining order, in the form of compliance with court directives, and keeping the defendant within the State's borders, so as to properly monitor him, outweigh the defendant's right to travel to Texas. As such, the trial court did not abuse its discretion in revoking the defendant's probation based on the defendant's out-of-state travel.

Second, and finally, we address whether the trial court errantly based the revocation, in part, on the defendant's failure to comply with the employment and psychosexual evaluation requirements, because he did not have time to complete them due to his arrest in Waco. We note that, following the defendant's first violations, he was granted leniency in order to comply with the

conditions of probation and was instructed not to travel outside the state. Rather than take advantage of the opportunity given to him by the trial court, he chose to defy the court's order and travel to Texas, where he was arrested. We cannot discern an abuse of discretion by the trial court when the defendant, of his own volition, chose to ignore a court order which ultimately caused him to surrender his chance to come into compliance with the conditions of probation. We conclude that the trial court did not abuse its discretion in basing the revocation, in part, on the previous violations.

## Conclusion

We conclude that any one of these violations would have supported the trial court's revocation of probation; however, taken cumulatively, they provide abundant reason to do so. We affirm the trial court's revocation of probation.

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE